IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY EDWARD G.,** : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| vs. : | NO.   23-cv-3456 |
| : | |
| **MARTIN J. O'MALLEY,** : | |
| **Commissioner of Social Security,** : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **August 2, 2024**

Plaintiff Rodney Edward G. brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 403-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 14) is **GRANTED**.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed for SSDI and SSI, alleging disability since October 1, 2017, due to migraines, depression, anxiety, bipolar disorder, and paranoia.  (R. 66-67, 77-78, 297-305).  Plaintiff's application was denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 66-88, 91-128, 161-73).  Plaintiff, represented by counsel, and a vocational expert testified at the January 20, 2022 and September 22, 2022 administrative hearings.  (R. 25, 43-65).  Plaintiff also amended

his alleged disability onset date to March 3, 2020.  (R. 319-20).  On October 25, 2022, the ALJ issued a decision unfavorable to Plaintiff.  (R. 22-42).  Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on June 5, 2023, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 11-16).

On September 5, 2023, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No 1).  He consented to my jurisdiction pursuant to 28 U.S.C. § 636(C) on September 26, 2023.  (Consent, ECF No. 4).  On February 16, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 14).  The Commissioner filed his response on April 17, 2024, and Plaintiff filed a reply on May 1, 2024.  (Resp., ECF No. 17; Reply, ECF No. 18).

## II.     FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on April 12, 1969, and was fifty years old on the alleged amended disability onset date.  (R. 66).  He has at least a high school education and previously worked as a garbage collector, drill press tender, and hardness inspector.  (R. 35).

### A.     Medical Evidence

Plaintiff has received mental health treatment at Central Behavioral Health since 2017. (R. 453-586, 1105-83, 1233-1498, 1536-1609).  From November 2019 through January 2020, he

---

[1] Because Plaintiff's request for review implicates only his mental impairments, the Court does not summarize the evidence relating to any physical impairments.

received mental health treatment while he was incarcerated at the Mercer County Correctional Facility. (R. 733-35). He complained that he was depressed, anxious, and frustrated and had problems focusing, sleeping, and fighting with other inmates. (*Id.*). There were findings of a depressed and anxious mood. (*Id.*).

In July 2020, Plaintiff reported to his therapist at Central Behavioral Health that he had been less angry and was better able to handle interpersonal conflicts, including a problem with his boss. (R. 1106). At a subsequent session, he was found to have a circular and evasive thought process and was observed drinking from a can of beer in camera view. (R. 1112). At an August 2020 medication management appointment with his treating psychiatrist, Plaintiff reported migraines, difficulty sleeping, increased anxiety, and shaking. (R. 1166). He said that he was hearing voices telling him to drink and to "kill a cop." (*Id.*). He was found to be uncooperative and lethargic with agitated behavior, angry mood, and limited insight and judgment. (*Id.*). Plaintiff became abusive and abruptly ended the session. (R. 1166-67). Throughout 2020 and 2021, the same or similar problems persisted despite dosage adjustments. (R. 1169-83, 1432-33, 1437, 1451, 1493). Plaintiff also reported that he had pulled out a gun because he believed he had been disrespected. (R. 1166, 1415).

Treatment records from 2022 show that Plaintiff had a depressed mood, tangential thought processes, and downcast eyes; he reported anxiety about his upcoming Social Security disability hearing and anger towards his father; he discussed the difficulties he had with getting his car back and mentioned that he planned to visit his girlfriend; the provider smelled marijuana at some sessions; and Plaintiff reported that he was taking regular walks and getting regular sleep. (R. 1496-97, 1545, 1550, 1556, 1560, 1566, 1579). In June 2022, Plaintiff cancelled a therapy appointment "to do a job" (R. 1584). Subsequently, the therapist drew Plaintiff's

attention to how his tendency to be untruthful about his drinking hindered his progress, and Plaintiff expressed pessimism about opening up to a new therapist. (R. 1586, 1591, 1597). At a July 2022 session, Plaintiff and his new therapist remained silent for most of the session. (R. 1600). He also indicated that he believed it was not fair that the therapist had a duty to warn if he intended and planned to harm someone else, and he indicated that he felt anger towards, and was anxious to be near, the police. (R. 1596, 1608).

On July 30, 2020, state agency psychological consultant Shelley Ross, Ph.D., found that Plaintiff could perform one to two-step tasks; did not have any understanding and memory limitations; was not significantly limited in his ability to carry out very short and simple instructions, make simple work-related decisions, and ask simple questions or request assistance; and was moderately limited in the remaining categories in the areas of concentration and persistence, social interaction, and adaptation. (R. 73-75, 85-87). On November 4, 2020, Susan Malkoff Schwartz, Ph.D., another state agency psychologist, generally agreed with Dr. Ross's findings; however, she did find in her residual functional capacity (RFC) assessment that Plaintiff was moderately limited in his ability to understand and remember detailed instructions and had marked limitations in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (R. 103-05, 121-24). Furthermore, Dr. Schwartz indicated that Plaintiff was moderately limited with respect to all four paragraph "B" criteria. (R. 100, 119).

On January 21, 2022 and January 18, 2022, respectively, Plaintiff's treating psychiatrist, Guy Glass, M.D., and Jennie Bello, M.A., his therapist, signed a medical source statement. (R. 1499-1503). They opined that Plaintiff had marked limitations in making judgments on simple work-related decisions and moderate limitations in understanding and remembering

instructions/information and carrying out and applying instructions/information due to disruption in executive functioning (attention, working memory, and problem solving), anxiety and depression, low frustration tolerance, and non-linear thought patterns. (R. 1501). The treating providers assessed marked limitations in interacting appropriately with supervisors, responding appropriately to usual work situations, and maintaining concentration, persistence, and/or pace in a work setting, (R. 1502). They stated that he had moderate limitations in interacting appropriately with the public and with co-workers. (*Id.*). For support, Dr. Glass and Ms. Bello cited to Plaintiff's difficulties accurately interpreting the intentions of others, voice hearing (command hallucinations), verbal outbursts, and history of trauma. (*Id.*). They further indicated that Plaintiff would be "off task" 25% or more of the time and would be absent from work three or more days per month. (R. 1502-03). The treating providers also found that Plaintiff had problems with his reasoning abilities (drawing inferences based on factual information and finding solutions to problems) and was poorly oriented to time. (R. 1502).

      B.      **Non-Medical Evidence**

On July 27, 2020, Plaintiff completed an adult function report. (R. 539-67). He stated that he cannot sleep and has nightmares, gets frustrated doing household and yard work, needs reminders to take care of his needs, cannot pay bills, sometimes does not go out of the house because of paranoia, goes food shopping twice a month and to church once a week, can pay attention for one minute, is not good at following written or spoken instructions, does not get along with authority figures, specifically police officers, has been fired or laid off because of interpersonal conflicts, and cannot handle stress or changes in routine. (R. 360, 362-66). He endorsed problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, using hands, and getting

along with others.  (R. 363).

In a letter dated May 13, 2021, Plaintiff's employer notified Plaintiff that his employment had been terminated as of May 12, 2021 for violating the company's attendance policy.  (R. 316-18).

Plaintiff testified at the January 20, 2022 administrative hearing.[2]  (R. 30).  He said that he has difficulty getting along with his supervisors and others.  (R. 30-31).  He feels depressed, which affects his ability to concentrate, focus, and remember, and does not feel like doing anything.  (R. 31).  He takes medication to help with his alcohol dependence, but he is not always compliant.  (*Id.*).  He further indicated that he has used marijuana, with the most recent relapse caused by the death of someone he knew.  (*Id.*).  Plaintiff hears voices despite taking his medications, and the hallucinations prompt him to drink.  (*Id.*).

## III.   ALJ'S DECISION

Following the administrative hearings, the ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
2. The claimant has not engaged in substantial gainful activity since March 3, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: adjustment disorder with mixed anxiety and depressed mood; major depressive disorder; anxiety disorder;

---

[2] The transcript of the January 20, 2022 administrative hearing was omitted from the administrative record filed with the Court.  However, Plaintiff and the Commissioner do not dispute the ALJ's summary of his testimony.

|   |   |
|---|---|
|   | cannabis and alcohol use disorders; and migraine headaches (20 CFR 404.1520(c) and 416.920(c)). |
| 4. | The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(D), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and carry out simple repetitive tasks and instructions with no interaction with the public and only occasional interactions with supervisors and coworkers; the individual can concentrate, [maintain] pace and persist for [a] two hour period with normal breaks; the individual can adapt to simple changes in a routine work setting; the individual can make simple work-related decisions; the individual should have limited exposure to bright lights. |
| 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 7. | The claimant was born on April 12, 1969 and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 8. | The claimant has at least a high school education (20 CFR 404.1564 and 416.964). |
| 9. | Transferability of job skills is not material to the determination of disability |

     because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 28-36). Accordingly, the ALJ found Plaintiff was not disabled. (R. 36).

## IV.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [he] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a

> listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [his] past work. If the claimant cannot perform [his] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 1520.(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In his request for review, Plaintiff raises three claims for review:

> (1) The ALJ erroneously failed to find the opinion of the treating

>psychiatrist and therapist persuasive.
>
>(2) The ALJ erroneously found that Plaintiff's impairments did not meet the requirements of the listing of impairments.
>
>(3) The ALJ erred by failing to incorporate all of Plaintiff's credibly established limitations in his residual functional capacity finding and hypothetical question to the vocational expert.

(Pl.'s Br., ECF No. 14, at 4-18).

### A.     The Treating Psychiatrist's and Therapist's Opinion

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence. The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion. *See id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

10

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2). 416.920c(c)(2).

The ALJ provided the following explanation for the weight she accorded the opinion of Plaintiff's treating psychiatrist and therapist:

> In January 2022, two of the claimant's treating providers, Guy Glass, M.D., and Jennie Bello, M.A., opined that the claimant had moderate limits as to handling instructions, moderate limits as to interacting with coworkers and the public, marked limits as to interacting with supervisors, marked limits as to responding appropriately to usual work situations and to changes in a routine work setting, and marked limits in maintaining concentration, persistence, and/or pace in a work setting ([R. 1499-1503]). In addition, the claimant would be off-task 25% or more of the time and absent from work three or more days per month as a result of impairments. This opinion is not persuasive. Although these individuals were treating providers who are aware of the claimant's longitudinal mental health treatment and symptoms, the medical evidence of record, which reflects conservative, routine treatment, inconsistent compliance with recommended treatment and generally mild to moderate symptoms, does not support this level of impairment.

(R. 33-34).

### 1. The Parties' Positions

Plaintiff argues that the ALJ failed to consider whether Dr. Glass's and Ms. Bello's opinion is consistent with the evidence from other medical and nonmedical sources in the record.

(Pl.'s Br., ECF No. 14, at 8).  He further argues that, had the ALJ considered this factor, she would have recognized the consistency of the opinion with the other evidence, specifically the medical records from the jail, the opinion of a state agency psychologist, Plaintiff's statements, and the statement by Plaintiff's employer regarding his termination.  (*Id.* at 9-10).  Furthermore, Plaintiff asserts that the opinion should have been found persuasive because it is supported by the objective medical evidence and the treating sources' explanations.  (*Id.* at 10-12).  He also indicates that the ALJ failed to mention the treating providers' supporting explanations, substituted her lay evaluation of the treatment records for the medical judgment of the treating psychiatrist and therapist, and overlooked the difference between therapeutic and work settings.  (*Id.*).  Moreover, Plaintiff asserts that the ALJ did not acknowledge the psychiatrist's specialization or board certification, and she failed to accord adequate persuasive weight to this factor or the fact that Dr. Glass and Ms. Bello treated him for a significant period of time.  (*Id.* at 12-13).

       The Commissioner responds that the ALJ properly explained that she found the medical opinion unpersuasive because it is unsupported and inconsistent with the evidence.  (Resp., ECF No. 17, at 9).  He contends that the ALJ discussed how the evidence shows conservative, routine, and inconsistent treatment and mild to moderate symptoms, which do not reflect the level of limitations assessed by the providers.  (*Id.* at 9-10).  The Commissioner asserts that the ALJ provided valid reasons supported by substantial evidence to explain why the opinions are unpersuasive and that this Court cannot reweigh the evidence.  (*Id.* at 11-12).

       In his reply, Plaintiff asserts that the Commissioner, like the ALJ, disregards the critical consistency factor, thereby effectively conceding that she failed to follow the regulations.  (Reply, ECF No. 18, at 2-3).

### 2. Analysis

#### a. Consistency

An ALJ must "explain" how he or she considered both supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(c)(b)(2). Yet the ALJ's decision did not discuss the consistency of the treating providers' opinion. It merely addressed the opinion's supportability, weighing the fact that Dr. Glass and Ms. Bello were treating providers who were aware of Plaintiff's medical history against the conservative and routine treatment they provided, Plaintiff's inconsistent compliance with this treatment, and his generally mild to moderate symptoms. (R. 33-34); 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (stating that the "more objective medical evidence and supporting explanations presented by a medical source" in support of his or her medical opinion, the more persuasive the opinion will be). The ALJ did not mention whether, and the degree to which, Dr. Glass's and Ms. Bello's opinion is "consistent" with "evidence from other medical sources and nonmedical sources in the claim." *Id.* §§ 404.1520c(c)(2). 416.920c(c)(2).

The ALJ thereby failed to discuss in her evaluation of the opinion the medical records from the Montgomery County Correctional Facility, the opinion of Dr. Schwartz, the state agency psychological consultant, that Plaintiff had a marked limitation in his ability to maintain socially appropriate behavior, Plaintiff's statements and testimony, and the correspondence from his employer stating he was terminated because of his violation of the company's attendance policy. (*See, e.g.*, R. 49-56, 105, 124, 317-18, 359-67, 733-35); *see also, e.g.*, *Daniel M. v. O'Malley*, No. 23-2825, 2024 WL 2136008, at *3 (E.D. Pa. May 13, 2024) (granting Commissioner's unopposed motion to remand where ALJ's evaluation of the treating psychiatrist's opinion "failed to discuss the consistency of Dr. Mahajan's opinion with other

13

evidence of record, including Plaintiff's testimony, statements Plaintiff made to his medical providers, and hospital treatment in response to threats of extreme violence toward others"). In fact, the ALJ found Dr. Schwartz's opinion to be "partially persuasive," but she did not mention the consultant's finding concerning Plaintiff's marked limitations in socially appropriate behavior. (R. 34); *Daniel M.*, 2024 WL 2136008, at *3 ("This cursory consideration fails to discuss the consistency of Dr. Mahajan's assessed limitations with those of consultative psychologist Kirsten Mulray, Psy.D., who also assessed Plaintiff with marked limitations in the ability to respond appropriately to usual work situations and changes in a routine work setting . . . .") (citation omitted).

For his part, the Commissioner does not really address the ALJ's failure to discuss the consistency of the medical opinion. It asserts that, "[w]hen considering the evidence, the ALJ discussed that she found the opinions of Guy Glass, M.D., and Jennie Bello, M.A., unpersuasive because it was unsupported and inconsistent with the evidence." (Resp., ECF No. 17, at 9). This bald assertion is contradicted by the ALJ's decision, which, as the Commissioner also indicates, only discussed evidence related to supportability. (R. 33-34, Resp., ECF No. 17, at 9-10 ("The ALJ discussed that the evidence reflected conservative, routine, and inconsistent treatment, which included mainly mild to moderate symptoms and did not support the level of limitations assessed by the providers.")). In turn, Plaintiff is not asking this Court to reweigh the evidence (Resp., ECF No. 17, at 11-12); instead, he has established that the ALJ failed to satisfy her obligation under the controlling regulations to discuss how she considered the issue of consistency.

The Court accordingly remands for the ALJ to consider the consistency of Dr. Glass's and Ms. Bello's opinion.

b.       Supportability

Plaintiff argues that the ALJ should have found the opinion of Dr. Glass and Ms. Bello persuasive because the ALJ's lay interpretation of the treatment records is erroneous and based on mistakes of fact. (Pl.'s Br., ECF No. 14, at 10). He also claims that the ALJ failed to consider their supporting explanations. (*Id.* at 10-11). I agree with Plaintiff on both points.

In their opinion, the treating providers explained that the following medical findings supported their assessment of Plaintiff's mental limitations: disruption in executive functioning (attention, working memory, problem solving), anxiety and depression, low frustration tolerance, non-linear thought patterns, difficulties accurately interpreting the intentions of others, hearing voices (command hallucinations), verbal outbursts, trauma history, reasoning ability problems (drawing inferences based on factual information, finding solutions to problems), and poor orientation to time. (R. 1501-02). Under the applicable regulations, the ALJ must explain in her decision how she considered the supportability of the medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(c)(b)(2). However, the ALJ did not discuss or even mention the "supporting explanations presented by [the] medical source[s] . . . to support [their] medical opinion." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).

Furthermore, the ALJ indicated that the "objective medical evidence," i.e., the conservative and routine treatment, inconsistent compliance with recommended treatment, and generally mild to moderate symptoms, presented by Dr. Glass and Ms. Bello do not support their assessed limitations. *Id.;* (R. 32-33). However, this finding is not supported by substantial evidence because the treatment records show that Plaintiff's symptoms were more severe than the ALJ indicated. As the ALJ explained in her step three analysis, Plaintiff was found to be agitated and paranoid with depressed/anxious mood, blunted affect, and loud speech at times,

occasionally tearful, had problems with managing anger and verbal outbursts, heard voices telling him to kill a cop, had thoughts of hurting policemen, occasionally presented as agitated or demanding, experienced persecutory delusions, had problems accurately interpreting the intentions of others, and had been fired or laid off from a job due to problems getting along with other people. (R. 29) (citing R, 360, 456, 461, 1061, 1115, 1146, 1166, 1415, 1418, 1426, 1431, 1438, 1492, 1493, 1502). The ALJ also acknowledged that, among other things, Plaintiff was tangential at times and reported he had pulled out a gun because he felt disrespected. (*Id.*) (citing R. 360, 362, 463, 469, 1132, 1166, 1415, 1427, 1501-02).

Furthermore, the ALJ referenced this evidence in the factual summary of the record for purposes of the RFC assessment. For instance, she acknowledged that, as per the August 18, 2020 psychiatry note, Plaintiff reported shaking and auditory hallucinations telling him to drink and "kill a cop." (R. 32) (citing R. 1166). He then became agitated and abusive and abruptly ended the session. (*Id.*) (citing R. 1166-67); *see also, e.g.*, R. 1169 (reported ongoing auditory hallucinations), 1431-32 (irritable mood, poor insight/judgment, and frustration with a co-worker and paranoid feelings).

The Commissioner notes that the ALJ, in this narrative summary, pointed to records indicating that Plaintiff was, at times, less angry and better able to handle personal conflicts, had generally normal mental health examination findings at some sessions, discussed planning a visit with his girlfriend, and mentioned that he had canceled an appointment to do a job. (Resp., ECF No. 17, at 8-9) (citing R 31-33, 1106-07, 1112, 1393, 1493-94, 1556, 1584). However, given the other medical evidence in the record, no reasonable mind could find that Plaintiff had "generally mild to moderate symptoms."[3] *See, e.g., Burnett*, 220 F.3d 118.

---

[3] Plaintiff also argues that the ALJ's assessment was erroneous because she did not

Accordingly, the Court remands for the ALJ to conduct a proper evaluation of the supportability of the opinion provided by Dr. Glass and Ms. Bello.

### B.  Plaintiff's Remaining Arguments

In his second claim for relief, Plaintiff argues that the ALJ erroneously found at step three of the sequential inquiry that Plaintiff's impairments did not meet the requirements of Listings 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). (Pl.'s Br., ECF No. 14, at 14-15). The ALJ found that Plaintiff had moderate limitations in the areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (R. 29). Plaintiff asserts that his statements, the treatment records, and the assessment of Dr. Glass and Ms. Bello demonstrate that he had marked limitations in these three areas. (Pl.'s Br., ECF No. 14, at 14). He also argues that the ALJ erred in finding that Plaintiff's impairments did not meet the paragraph "C" criteria of Listing 12.04. (*Id.* at 15). Finally, Plaintiff asserts in his third claim that the ALJ erred by failing to incorporate the established limitations assessed by the treating providers in the RFC. (*Id.* at 16-18).

It is undisputed that Plaintiff's step three claim implicates the ALJ's evaluation of the treating providers' medical opinion. (*See, e.g.*, Resp., ECF No. 17, at 8 ("Plaintiff maintains that the ALJ's assessed paragraph B limitations are inconsistent with the evidence, which he claims supports marked limitations in three areas of mental functioning and thus he met the Listing.

---

acknowledge Dr. Glass's specialization as a psychiatrist. (Pl.'s Br., ECF No. 14, at 12-13). He asserts that the ALJ failed to assign any additional weight to the opinion on account of this factor and additionally gave insufficient weight to the fact that Dr. Glass and Ms. Bello based their opinion on treating and observing Plaintiff over a significant period of time. (*Id.*). However, it is undisputed that the ALJ was not required to articulate her findings with respect to these additional factors. *See, e.g.*, 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). The ALJ also explicitly considered the fact that the psychiatrist and the therapist treated Plaintiff and were aware of his treatment history and symptoms in her evaluation of their opinion. (R. 33-34).

Plaintiff relates this error to the ALJ improperly considering the opinions of his treating psychiatrist and therapist.") (citing Pl.'s Br., ECF No. 14, at 4-14); Reply, ECF No. 18, at 4 ("Contrary to Defendant's assertion that the Listing's 'high bar has not been met,' a finding of listing-level impairment is supported by the opinion of Dr. Glass and Ms. Bello, and consistent with the rest of the evidence.")). The ALJ's step three analysis may change based on her evaluation of the supportability and consistency of the medical opinion. Furthermore, the Court need not decide whether the ALJ's failure to incorporate all of Plaintiff's clearly established limitations in the RFC—which would be decided later in the five-step analysis—constitutes a basis for remand. If the ALJ credits the opinion on remand, Plaintiff's step three and RFC claims may fade away. *See, e.g.*, *Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at \*4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his or her findings after remand).

Accordingly, the Court does not consider these additional arguments at this time.

VI.   **CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is **GRANTED** to the extent that it requests remand. This matter is remanded for further proceedings consistent with this memorandum. An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge